Michael L. Greenwald (*admitted pro hac vice*)
James L. Davidson (*admitted pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and proposed Class Counsel

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Jackson, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Gen Digital Inc.,<br><br>Defendant. | No.: 2:25-cv-00535-MTL<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

**Introduction**

After nearly a year of contested litigation involving two separate cases, and as a result of extensive arm's-length, good-faith negotiations overseen by the Hon. Diane M. Welsh (Ret.) of JAMS, Michelle Jackson ("Plaintiff") and Gen Digital Inc. ("Gen") reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] Plaintiff now seeks preliminary approval of the parties' class action settlement agreement ("Agreement").[2]

The settlement requires Gen to pay $9.95 million into a non-reversionary common fund from which participating Settlement Class Members will receive payments. Gen will fund the settlement within 30 days of preliminary approval by this Court, after which the fund will accrue interest in FDIC-insured accounts for the benefit of Settlement Class Members, assuring an even greater amount will be available when the fund is ready for distribution.

In addition, Gen will institute practice changes to help it avoid placing prerecorded calls to persons who are not its customers in the future. To that end, Gen will utilize the Federal Communications Commission's ("FCC") Reassigned Numbers Database[3] to help it avoid placing calls with an artificial or prerecorded voice to cellular telephone numbers that are permanently disconnected and made available for reassignment after Gen obtained consent to call the numbers.

---

[1]  Shortly after Plaintiff filed the instant case, a different plaintiff filed a proposed class action against Gen asserting similar violations of the TCPA. *See Lewis v. Gen Digital Inc.*, No. 2:25-cv-00647-SMB (D. Ariz.). This settlement covers both actions.

[2]  The Agreement and its exhibits are appended to the Declaration of Michael L. Greenwald, which is attached as Exhibit A. Capitalized terms in this motion have the same meanings as in the Agreement.

[3]  *See* https://www.fcc.gov/reassigned-numbers-database (last visited Dec. 19, 2025) ("The FCC's Reassigned Numbers Database (RND) is designed to prevent a consumer from getting unwanted calls intended for someone who previously held their phone number. Callers can use the database to determine whether a telephone number may have been reassigned so they can avoid calling consumers who do not want to receive the calls.").

1

The settlement constitutes an outstanding result for Settlement Class Members in this TCPA case involving calls to wrong or reassigned cellular telephone numbers. Plaintiff and proposed Class Counsel respectfully submit that the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. This is especially so in light of the substantial risks and uncertainties of protracted litigation and that participating Settlement Class Members stand to receive meaningful cash payments (Plaintiff estimates $200-$625 each) as a result.

Accordingly, Plaintiff respectfully requests that this Court enter the accompanying agreed order preliminarily approving the settlement.

## Summary of the Class Settlement

**I.     Plaintiff alleges that Gen violated the TCPA by placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers. Gen denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain calling practices that escaped state invasion of privacy and nuisance statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[4] To that end, "[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using any automatic telephone dialing system or an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . . .'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011).

The claims at issue here are relatively straightforward: Gen placed calls, in connection with which it used an artificial or prerecorded voice, to Plaintiff's cellular telephone number regarding a LifeLock account, even though Plaintiff was never a Gen customer or accountholder. Gen made these calls while attempting to reach its own customers regarding their LifeLock or Norton accounts. Gen called Plaintiff because its customer provided Plaintiff's cellular telephone number as a contact number. At issue is whether these claims, and those of similarly situated consumers, violate the TCPA. Gen

---

[4]     Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

2

maintains that it did not violate the TCPA, that it was entitled to rely on consent that its customers provided, that others could have provided valid consent on Plaintiff's behalf, that its calls were made for "emergency purposes" and therefore are not actionable, and that, regardless, class certification (other than for settlement purposes) is improper.

A caller has a complete defense to a TCPA claim if it can demonstrate that it made calls with the prior express consent of the called party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). As well, the TCPA exempts from liability calls "made for emergency purposes[.]" 47 U.S.C. § 227(b)(1)(A).

**II.   Despite facing significant obstacles to proving liability and attaining and maintaining class certification, Plaintiff's substantial litigation efforts resulted in the $9.95 million settlement now before this Court.**

Gen vehemently disputes that it violated the TCPA and raised a host of defenses, both on the merits and to class certification. For example:

- Gen intended to move for summary judgment, asserting, among other things, that it could reasonably rely on consent to call provided by its customers and that class members must individually demonstrate receipt of prerecorded voice messages. If this Court accepted Gen's position, Plaintiff's claims—and those of Settlement Class Members—would fail;

- Gen further contended that non-customers could and do consent to receiving prerecorded calls and that for those persons, issues of prior express consent would defeat their claims;

- Gen also maintained that the vast majority of the calls it places are made for "emergency purposes" and therefore are not actionable. 47 U.S.C. § 227(b)(1)(A). Gen makes these calls to its LifeLock customers for the purpose of delivering time-sensitive alerts regarding financial activity that may pose a risk to the customer, such as the appearance of the customer's personal information on the dark web, data breaches involving the customer's personal information, unusual credit card charges, the opening of a new credit account under the customer's name, opening of a new buy-now-pay-later loan in the customer's name, and a change in the customer's credit score—all of which may be signs of identity theft. As with its consent defense, if this Court found Gen's calls to be protected by the "emergency purposes" exception, Plaintiff's claims—and those of Settlement Class Members—would fail;

- Gen asserted that some or all claims are subject to binding arbitration and an individual (non-class) dispute resolution clause (including a class-action waiver), which—if enforced—could require individualized proceedings and

- preclude class treatment, materially reducing or eliminating relief on a classwide basis;
- Gen asserted constitutional defenses aimed at limiting or eliminating statutory damages;
- Gen maintained that, for a variety for reasons, a class could not be certified for litigation purposes or that if a class was certified, certification could not be maintained through trial. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (Lanza, J.) (denying motion to certify TCPA class); *Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same);
- Gen suggested that it maintains safeguards to ensure compliance with the TCPA. While Gen vehemently disputes any liability, to the extent any violations did occur, Gen argued that any violation of the TCPA was unintentional and would not support increased statutory damages; and
- Even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

Against this backdrop, and after conducting significant fact discovery and extensive meet-and-confer efforts to identify potential class members and explore the contours of Gen's defenses, the parties attended mediation on November 21, 2025 before Judge Welsh.[5]

### III. The settlement provides for a non-reversionary common fund for the benefit of Settlement Class Members that should ultimately exceed $10 million, as well as important practice changes.

The Agreement defines a Settlement Class under Rule 23(b)(3) comprised of:

All persons throughout the United States (1) to whom Gen Digital Inc. placed, or caused to be placed, a call regarding a LifeLock or Norton

---

[5] *See* https://www.jamsadr.com/welsh/ (last visited Dec. 19, 2025) ("Over the past 32 years, as a JAMS neutral and a United States Magistrate Judge, she has successfully resolved over 5,000 matters, covering virtually every type of complex dispute. Specifically, Judge Welsh has extraordinary skill in resolving high-stakes multi-party commercial disputes, employment matters, catastrophic personal injury cases, class actions, mass torts and multi-district litigations (MDL's).").

4

account, (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a person who has or had a LifeLock or Norton account with Gen Digital Inc., (3) in connection with which Gen Digital Inc. used or caused to be used an artificial or prerecorded voice, (4) from February 19, 2021 to October 30, 2025.

Participating Settlement Class Members who received one or more artificial or prerecorded voice calls from Gen regarding a LifeLock or Norton account between February 19, 2021 and October 30, 2025 and who never were LifeLock or Norton customers will receive a *pro-rata* share of the settlement fund, after attorneys' fees, costs, expenses, and a service award for Plaintiff are deducted. While the exact per-claimant recovery will not be known until Settlement Class Members are provided with an opportunity to submit claims, each participating Settlement Class Member likely stands to receive between $200 and $625. In exchange, Settlement Class Members will release their claims arising out of prerecorded calls Gen placed to their cellular telephones during the class period.

Subject to this Court's approval, an award of attorneys' fees and expenses, and a service award for Plaintiff, also will be deducted from the common fund. To that end, Class Counsel will seek one-third of the settlement fund in attorneys' fees,[6] as well as the reimbursement of litigation costs and expenses not to exceed $20,000. Plaintiff will seek a service award of $15,000 in recognition for her tremendous efforts in prosecuting this case, including, among all else, responding to written discovery requests, reviewing and approving pleadings, attending mediation, and routinely conferring with counsel.

---

[6] *See, e.g.*, *Head v. Citibank, N.A.*, No. 18-cv-08189-PCT-ROS, 2025 WL 226660, at *4 (D. Ariz. Jan. 15, 2025) (Silver, J.) (awarding fees of one-third of $29.5 million common fund in TCPA class action); *Brown v. DirecTV*, No. 2:13-cv-01170-DMG-E, Doc. 538 (C.D. Cal. Mach 3, 2023) (awarding fees of one-third of common fund in TCPA class action); *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-00796-JLT-BAM, 2024 WL 557782, at *13 (E.D. Cal. Feb. 12, 2024) (granting preliminary approval to class action settlement where counsel requested attorneys' fees of 40% of the common fund); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding fees of 33% of common fund in TCPA class action settlement).

Of note, Gen has not agreed to Class Counsel's request for an award of attorneys' fees, costs, and expenses. There is no "clear sailing" provision here. As such, Gen is free to oppose these requests. Moreover, this Court's approval of the requested awards is not a condition of the settlement.

In addition to the substantial monetary relief, Gen will institute practice changes designed to materially reduce the likelihood that consumers who are not Gen's customers will receive future prerecorded calls. These measures provide continuing benefits beyond the Settlement Class by promoting compliance-focused calling practices and reducing unwanted and intrusive calls. In short, the practice changes deliver real-world, forward-looking value that further supports preliminary approval under Rule 23(e).

Finally, the Agreement requires a robust, industry standard notice program, including direct mail notice to each potential Settlement Class Member who can be identified and the creation of a dedicated settlement website and toll-free telephone number, through which Settlement Class Members can submit claims and obtain more information about this case and settlement.

## Argument

**I. This Court should conditionally certify the Settlement Class.**

**A. TCPA claims are well suited for class treatment.**

"Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

And this remains true for TCPA class actions like this one involving prerecorded calls to wrong or reassigned cellular telephone numbers. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying a "wrong number" TCPA class over objection); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (Silver, J.) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329

F.R.D. 238 (D. Ariz. 2019) (Logan, J.) (same); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same).[7]

### B. The Settlement Class satisfies the requirements of Rule 23(a).

#### 1. The Settlement Class is so numerous that joinder of all members is impracticable.

Rule 23(a) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, a class of greater than forty members is sufficient." *Russell v. Ray Klein, Inc.*, No. 1:19-CV-00001-MC, 2022 WL 1639560, at *2 (D. Or. May 24, 2022).

Here, during the class period of February 19, 2021 to October 30, 2025, Gen delivered prerecorded voice messages to more than 300,000 telephone numbers that the FCC's Reassigned Numbers Database reported to be disconnected and made available for reassignment. The Settlement Class, therefore, "exceeds the forty-member threshold[.]" *Id*. And joinder of all Settlement Class Members is impracticable. *See Lavigne*, 2018 WL 2694457, at *3-4 (finding a proposed "wrong number" TCPA class satisfied numerosity where "Defendants' own call logs . . . identify 38,125 separate phone numbers (both landline and cell phone) that . . . were coded as 'Bad/Wrong Number[.]'").

#### 2. Questions of law and fact are common to all members of the Settlement Class.

Rule 23(a)(2) requires the existence of common questions of law or fact. *See* Fed. R. Civ. P. 23(a)(2). Here, whether Gen used an artificial or prerecorded voice in connection with the calls at issue is a question common to the Settlement Class. *See Knapper*, 329 F.R.D. at 242 ("Whether Defendant used a[] . . . prerecorded voice to

---

[7] Plaintiff's counsel—Greenwald Davidson Radbil PLLC ("GDR")—was appointed as counsel for the respective classes in *Head*, *Wesley*, *Knapper*, and *Johnson*, underscoring their adequacy as Class Counsel here.

7

allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke."). Additionally, that each member of the Settlement Class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See id*. ("[A]ll putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. Thus, whether each class member suffered the same injury is also a 'common contention.' . . . Therefore, commonality is satisfied."). What's more, whether liability attaches to "wrong number" calls is a question common to the Settlement Class. *See id.* (finding that "whether liability attaches for wrong or reassigned numbers" would "produce an answer that is central to the validity of each claim in one stroke").

### 3. Plaintiff's claims are typical of the claims of members of the Settlement Class.

Plaintiff and members of the Settlement Class were similarly harmed by receiving calls with an artificial or prerecorded voice from Gen even though they are not Gen's customers or accountholders. Plaintiff, therefore, possesses the same interests, and seeks the same relief, as do members of the Settlement Class. *See id.* at 242-43 ("The Court finds that the typicality requirement is met. Here, Plaintiff is a not a customer of Defendant and alleges that Defendant did not have consent to call her before it dialed her phone number. . . . She alleges that the putative class members were also wrongly contacted by Defendant. . . . Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members.").

### 4. Plaintiff and her counsel will protect the interests of members of the Settlement Class.

Rule 23(a)(4) requires that "the representative parties [] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Here, Plaintiff has protected, and will continue to protect, the interests of Settlement Class Members. *See generally* Declaration of Michelle Jackson, attached as Exhibit B. Plaintiff has devoted significant time and effort to this case, including gathering responsive documents, regularly communicating with her counsel, and

8

participating in mediation. *Id*., ¶¶ 9-11. And she has, and is prepared to, make all necessary decisions involving this case with Settlement Class Members' best interests in mind. *Id*. at ¶ 12. Furthermore, Plaintiff retained counsel experienced and competent in class action litigation, including that under the TCPA. *See* Ex. A, ¶¶ 5, 10-42; Declaration of Anthony Paronich, attached as Exhibit C, at ¶¶ 6-11.

### C. The Settlement Class satisfies the requirements of Rule 23(b).

#### 1. The questions of law and fact common to members of the Settlement Class predominate over any questions affecting only individual members.

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Relevant, then, is that the TCPA prohibits, absent prior express consent, calls made to cellular telephones using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A). Given as much, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020).

#### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

"Superiority focuses on whether classwide litigation of common issues will reduce costs and promote efficiency." *Russell*, 2022 WL 1639560, at *4. "Relevant considerations include any interest in individually controlling separate actions, the presence of any current litigation concerning the controversy, the benefits of the chosen forum, and potential difficulties managing a class action." *Id*. (citing Fed. R. Civ. P. 23(b)(3)(A)–(D)). "Central to this inquiry, and class actions generally, is the goal of overcoming the problem that small recoveries do not provide the incentive for individuals to bring a solo action." *Id*.

9

Pertinent, then, is that litigating TCPA claims as part of a class action is generally superior to litigating them in successive individual lawsuits. *See Reliable Money Ord., Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd,* 704 F.3d 489 (7th Cir. 2013) ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations."). This is, in part, because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, Settlement Class Members' claims are identical, they arise from the same standardized conduct, and they result in uniform damages. *See Knapper*, 329 F.R.D. at 247.

Also important, absent a class action thousands of claims like Plaintiff's will go unredressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute.").

A class action, therefore, is the superior method to adjudicate this matter. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("[T]he Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' [TCPA] claims.").

**II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).**

Rule 23(e) requires that this Court make a preliminary determination of the settlement's fairness. "In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Servs., Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement

has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, although the presence of arm's-length negotiation does not create a *presumption* of fairness, *see Saucillo v. Peck*, 25 F.4th 1118, 1132 (9th Cir. 2022), "such negotiations can weigh in favor of approval." *Cmty. Res. For Indep. Living v. Mobility Works of Cal.*, 533 F. Supp. 3d 881, 888 (N.D. Cal. 2020). *See also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014).

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "at the preliminary approval stage, courts need only evaluate 'whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Gonzalez v. Germain Law Office*, No. 15-CV-01427-PHX-ROS, 2016 WL 3360700, at *4 (D. Ariz. June 1, 2016) (Silver, J.) (preliminarily approving class action settlement) (quoting *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)).[8]

---

[8] An "obvious deficiency" to a class action settlement can include one or more of the *Bluetooth* factors: (1) when counsel receives a disproportionate distribution of the settlement or where the class receives no monetary distribution; (2) when the parties negotiate a clear-sailing agreement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class. *In re*

So, while a complete fairness evaluation is unnecessary at this juncture, Plaintiff and her counsel strongly believe that the resolution reached here is in the best interests of the Settlement Class.

The Ninth Circuit has identified eight factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23(e) likewise requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### A. The strengths of Plaintiff's case and the risks inherent in continued litigation against Gen, and attaining class certification, favor preliminary approval.

The first, second, and third *Hanlon* factors support preliminary approval. Of course, every class action involves some level of uncertainty, both on the merits and on the appropriateness of class certification. This case is no different, as there was no

---

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). As noted, none of these deficiencies is present here.

guarantee that Plaintiff would attain and maintain certification of the class through trial or that this Court, or the trier of fact, would find in Plaintiff's favor as to liability.

While Plaintiff strongly believes in her claims, Gen vigorously disputes that it violated the TCPA. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions being issued from district courts on an ongoing basis. Against that backdrop, Gen raised a host of defenses, both on the merits and to the maintenance of class certification. *See* Summary of the Class Settlement, *supra*. Thus, there can be little question that Plaintiff faced real risks in prevailing on her claims and attaining and maintaining certification of the class through trial.

There is also no doubt that, absent settlement, the parties faced years of protracted litigation, including summary judgment motions, additional discovery, trial, and appeals. Considering that this case has already been pending for nearly a year, the risk, expense, complexity, and likely duration of further litigation also supports preliminary approval.

### B. The immediate, meaningful cash relief afforded by the settlement, plus important practice changes, favors preliminary approval.

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors preliminary approval. To reiterate, Gen will pay $9.95 million into a settlement fund to resolve this matter—an amount that is significant in its own right. There is no coupon component to this all-cash settlement, and no funds will revert to Gen. Moreover, the fund will be invested in FDIC-insured, interest-bearing accounts, assuring that over $10 million will be available by the time the fund is distributed.

The settlement fund compares favorably to other recoveries in TCPA class actions. After deducting the requested attorneys' fees, litigation costs and expenses, and service award, Class Counsel estimate that participating Settlement Class Members could receive between $200 and $625 each, an amount higher than other Court-approved TCPA settlements. *See, e.g.*, *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel.*

13

*Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)). *See also Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101); *Arthur v. Sallie Mae, Inc.*, No. 10-CV198-JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (more than $100 per participating class member); *Adams v. Allianceone Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).[9]

What's more, the settlement requires important practice changes that will benefit Settlement Class Members—and the general public—in the future.

In sum, the settlement here constitutes an objectively favorable result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### C. The posture of this case and experience and views of counsel favor preliminary approval.

Next, the fifth and sixth *Hanlon* factors likewise support preliminary approval. After nearly a year of contested litigation in two separate class actions—which included

---

[9] *See also, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944-45 (D. Minn. 2016) ($33.20 per claimant, which the court characterized as "compar[ing] favorably with settlements in other TCPA class actions."); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1047 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each); *Agne v. Papa John's Int'l*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant).

written discovery and document productions, a deposition, and significant briefing in connection with mediation—the settlement here was achieved with a clear view as to the strengths and weaknesses of Plaintiff's case and Gen's defenses.

Thus, both Class Counsel—who have substantial experience in litigating TCPA class actions—and this Court are adequately informed to evaluate the fairness of the settlement. Moreover, Plaintiff and Class Counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Judge Welsh, demonstrate the fairness of the settlement, and that the settlement is not a product of collusion. *See Bykov*, 2019 WL 1430984, at *5-6 ("participation in mediation tends to support the conclusion that the settlement process was not collusive"). Plaintiff submits that the substantial value of the recovery here reflects confidence in the claims at issue. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").[10]

**D. The settlement treats Settlement Class Members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. Here, each Settlement Class Member will be treated

---

[10]  The two remaining *Hanlon* factors—the presence of a governmental participant and the reaction of Settlement Class Members to the proposed settlement—cannot be addressed at this stage because class notice has not been issued. *Hanlon*, 150 F.3d at 1026. Plaintiff will address the reaction of Settlement Class Members and any governmental entities in connection with her motion for final approval of the settlement.

equitably as each participating Settlement Class Member will receive an equal portion of the common fund after deducting attorneys' fees, expenses, and a service award, and will provide the same release to Gen. *See Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *2 (S.D. Ga. Feb. 13, 2025) ("In addition, because each participating Settlement Class Member will receive the same recovery, the settlement treats class members equitably relative to one another.")

### III. This Court should approve the parties' proposed notice program and schedule a final fairness hearing.

Pursuant to Rule 23(e), upon preliminary approval, this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll Settlement Administration LLC ("Kroll")—which will use all reasonable efforts to provide direct mail notice to each potential Settlement Class Member.

Kroll will perform reverse look-ups of cellular telephone numbers identified by Gen as potentially belonging to members of the Settlement Class to locate associated names and addresses. Addresses will be updated through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. Each person identified through this process will be sent, via U.S. mail, a postcard notice with a detachable claim form. To submit a valid claim, Settlement Class Members must aver that they received artificial or prerecorded voice calls from Gen on their cellular telephones during the class period and that they were not LifeLock or Norton customers.

Separately, notice will be published on a dedicated settlement website, through which Settlement Class Members can review relevant documents filed with this Court,

review the question-and-answer notice, and submit claims. The proposed notices are attached as Exhibit 1 to the Agreement.

In addition, Kroll will establish a toll-free phone number that Settlement Class Members can call to request additional information and have questions answered.

Plaintiff has strived to make it as convenient as possible for Settlement Class Members to learn of and participate in the settlement. *See Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (preliminarily approving TCPA class action settlement, approving materially identical notice plan, and noting that the administrator "will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with industry standard in wrong number TCPA class actions.").

The plan complies with Rule 23 and due process, and is industry standard in "wrong number" TCPA class actions like this one. In short, because this notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights.").

Lastly, the final step in the settlement approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). Plaintiff respectfully requests that this Court set a date for a hearing on final approval, at the Court's convenience, approximately five months after the Court preliminarily approves the settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying agreed order granting preliminary approval to the class action settlement, conditionally certifying the Settlement Class, appointing Plaintiff as class representative, and appointing GDR and Paronich Law as Class Counsel. Gen does not oppose this relief.

Dated: December 19, 2025

Respectfully submitted,

*/s/ Michael L. Greenwald*
Michael L. Greenwald
Greenwald Davidson Radbil PLLC

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.

Proposed Class Counsel