Michael L. Greenwald (*admitted pro hac vice*)
James L. Davidson (*admitted pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Anthony Paronich (*admitted pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

Class Counsel

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Jackson, *on behalf of herself and others similarly situated*, | ) ) ) No.: 2:25-cv-00535-MTL |
| Plaintiff, | ) ) |
| v. | ) **PLAINTIFF'S MOTION FOR** ) **ATTORNEYS' FEES, EXPENSES,** ) **AND A SERVICE AWARD** |
| Gen Digital Inc., | ) ) |
| Defendant. | ) ) |

**Introduction**

Plaintiff Michelle Jackson and Defendant Gen Digital Inc. ("Gen") agreed to resolve this matter for the benefit of a nationwide class of call recipients.[1] Specifically, Gen created a non-reversionary, interest-bearing common fund in the amount of $9,950,000 to compensate Settlement Class Members for their claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In addition to the substantial monetary relief, Gen will institute practice changes designed to materially reduce the likelihood that consumers who are not Gen's customers will receive future prerecorded calls. These practice changes deliver real-world, forward-looking benefits, conservatively valued at an additional $4.788 million. *See* Report of Jon Haghayeghi, Ph.D., attached as Exhibit A. In short, the settlement—with a total value of at least $14,738,000—constitutes an objectively excellent result.

On January 28, 2026, this Court preliminarily approved the settlement. *See* ECF No. 23. Subsequently, the Court-appointed claims administrator—Kroll, LLC—disseminated Court-approved class notice. In line with the class notice, Class Counsel seek an award of attorneys' fees equal to one-third of the common fund, or $3,316,666.66. Of note, when factoring in the value of the practice changes resulting from the settlement, Class Counsel's fee request amounts to just 22.5 percent of the total value of the settlement.

As well, Class Counsel request reimbursement of litigation costs and expenses totaling $15,387.66, and Ms. Jackson seeks a service award of $15,000.

Class Counsel's and Ms. Jackson's requests are reasonable, justified, and in line with awards approved in analogous TCPA class actions. Moreover, following notice to potential Settlement Class Members, no Settlement Class Member has objected to any part of the settlement or to the requests for attorneys' fees, costs, expenses, or a service

---

[1]    The class action settlement agreement ("Agreement") can be found at ECF No. 21-1 at 12-68. Capitalized terms in this motion have the same meanings as in the Agreement.

1

award to date. The deadline for Settlement Class Members to object or exclude themselves from the settlement is April 13, 2026.[2]

## Argument

**I. Class Counsel's request for attorneys' fees in the amount of one-third of the common fund—and 22.5 percent of the settlement's total value—is reasonable and justified.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[3] In the Ninth Circuit, courts typically award attorneys' fees as a percentage of the common fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1046 (S.D. Cal. 2015) ("Because this Settlement has produced a common fund for the benefit of the entire class, the Court elects to award fees under the percentage-of-recovery method."); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding attorneys' fees of 33.3% of $40 million common fund); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (Teilborg, J.) ("Based on the Court's experience with this case, the seven years of history, and the unique and favorable settlement on behalf of Plaintiffs, the Court finds a fee award of 33.33% more than reasonable in this case.").

Factors used to determine percentage-of-recovery awards include (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards in similar cases. *Vizcaino*, 290 F.3d at 1048-50. Class Counsel respectfully submit that the settlement here is not

---

[2]    Shortly after Ms. Jackson filed the instant case, a different plaintiff filed a proposed class action against Gen asserting similar violations of the TCPA. *See Lewis v. Gen Digital Inc.*, No. 2:25-cv-00647-SMB (D. Ariz.). This settlement covers both actions.

[3]    Internal citations and quotations are omitted unless otherwise noted.

ordinary, but extraordinary, and that an evaluation of the *Vizcaino* factors supports their attorneys' fee award request.

### A. Class Counsel obtained a tremendous result for Settlement Class Members.

In the face of significant legal hurdles, *see infra* Argument § I.B, Class Counsel obtained an excellent result for Settlement Class Members. To be sure, the settlement compares favorably to many approved TCPA class action settlements. First, and as noted, it includes significant practice changes to help prevent unwanted calls in the future. To that end, Gen will utilize the Federal Communications Commission's ("FCC") Reassigned Numbers Database[4] to help it avoid placing calls with an artificial or prerecorded voice to cellular telephone numbers that are permanently disconnected and made available for reassignment after Gen obtained consent to call the numbers. These measures provide continuing benefits beyond the Settlement Class by promoting compliance-focused calling practices and reducing unwanted and intrusive calls.

As Dr. Haghayeghi explains, the economic value of eliminating unwanted prerecorded calls can be measured using consumers' demonstrated willingness-to-pay for call-blocking services. *See* Ex. A, § IV.A.2–4. Using the lowest commonly observed market price for such services—$3.99 per month (annualized to $47.88)—and applying that conservative figure to an assumed 100,000 potential Settlement Class Members, the remedial relief yields an estimated benefit of approximately $4,788,000 over the next year. *Id.*, § IV.B.3(b)–(c). Appendix 1 further reflects that consumer price points for call-blocking products span a wider range (up to $95.88/year), underscoring the conservatism of the estimate used here. *Id.*, Appendix 1 (Table 1). Indeed, Dr. Haghayeghi's analysis has been accepted by courts around the country in TCPA cases to help value remedial

---

[4]    *See* https://www.fcc.gov/reassigned-numbers-database (last visited March 9, 2026) ("The FCC's Reassigned Numbers Database (RND) is designed to prevent a consumer from getting unwanted calls intended for someone who previously held their phone number. Callers can use the database to determine whether a telephone number may have been reassigned so they can avoid calling consumers who do not want to receive the calls.").

relief. *See Beiswinger v. West Shore Home LLC*, No. 3:20-cv-01286-HES-PDB, ECF No. 36 (M.D. Fla. May 26, 2022) (granting final approval to TCPA class settlement and awarding fees aided by Dr. Haghayeghi's valuation of the remedial relief); *Williams v. Choice Health Ins., LLC*, No. cv-292-RAH-KFP (M.D. Ala.) (same); *Diaz v. EXP Realty, LLC*, No. 6:18-CV-01851-PGB-EJK (M.D. Fla.) (same); *DeShay v. Keller Williams Realty, Inc.*, No. 2022CA000457 (Nineteenth Judicial Cir., Indian River Cnty., Fla.) (same); *Murray v. Grocery Delivery E-Services USA Inc.*, No. 19-cv-12608-WGY (D. Mass.) (same); and *Taylor v. Cardinal Fin. Co., Ltd. P'ship*, No. 21-cv-2744 (M.D. Fla.) (same).

Second, the $9.95 million (plus interest) cash value of the settlement far exceeds the value of other comparable approved TCPA class action settlements. To be certain, Class Counsel estimates, based on historical claims rates and the likely number of *bona fide* Settlement Class Members, that after deducting the requested attorneys' fees, litigation costs and expenses, the costs of notice and claims administration, and the requested service award to Ms. Jackson, participating Settlement Class Members who submit approved claims will receive between $250 and $600 each. *See, e.g.*, *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)). *See also Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101); *Arthur v. Sallie Mae, Inc.*, No. 10-CV198-JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (more than $100 per participating class member); *Adams v. Allianceone Receivables Mgmt., Inc.*, No.

3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member).[5]

In sum, the settlement here constitutes an objectively favorable result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

Also important, the settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, Settlement Class Members will receive money they otherwise would have likely never pursued on their own.

Importantly, the cash recovery is supplemented by structural relief that carries an independent economic value. Dr. Haghayeghi concludes, with a reasonable degree of economic certainty, that the remedial measures confer a substantial and independently

---

[5]     *See also, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944-45 (D. Minn. 2016) ($33.20 per claimant, which the court characterized as "compar[ing] favorably with settlements in other TCPA class actions."); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser*, 125 F. Supp. 3d at 1047 (approving TCPA settlement in which class members received $13.75 each); *Agne v. Papa John's Int'l*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant).

measurable economic benefit to Settlement Class Members, conservatively estimated at approximately $4.8 million over the next year alone. Thus, Settlement Class Members receive both immediate monetary compensation and meaningful forward-looking protection.

At bottom, the settlement constitutes an objectively excellent result for Settlement Class Members and supports an award of attorneys' fees of one-third of the common fund and 22.5 percent of the settlement's total value.

**B. This matter posed substantial litigation-related risks.**

When calculating a percentage-of-recovery award, "[r]isk is a relevant circumstance." *Vizcaino*, 290 F.3d at 1048. Here, Ms. Jackson faced a number of significant hurdles as Gen vehemently disputes that it violated the TCPA and raised a host of defenses, both on the merits and to class certification:

- Gen intended to move for summary judgment, asserting, among other things, that it could reasonably rely on consent to call provided by its customers and that class members must individually demonstrate receipt of prerecorded voice messages. If this Court accepted Gen's position, Ms. Jackson's claims—and those of Settlement Class Members—would fail;

- Gen further contended that non-customers could and do consent to receiving prerecorded calls and that for those persons, issues of prior express consent would defeat their claims;

- Gen also maintained that the vast majority of the calls it places are made for "emergency purposes" and therefore are not actionable. 47 U.S.C. § 227(b)(1)(A). Gen makes these calls to its LifeLock customers for the purpose of delivering time-sensitive alerts regarding financial activity that may pose a risk to the customer, such as the appearance of the customer's personal information on the dark web, data breaches involving the customer's personal information, unusual credit card charges, the opening of a new credit account under the customer's name, opening of a new buy-now-pay-later loan in the customer's name, and a change in the customer's credit score—all of which may be signs of identity theft. As with its consent defense, if this Court found Gen's calls to be protected by the "emergency purposes" exception, Ms. Jackson's claims—and those of Settlement Class Members—would fail;

- Gen asserted that some or all claims are subject to binding arbitration and an individual (non-class) dispute resolution clause (including a class-action waiver), which—if enforced—could require individualized proceedings and

6

preclude class treatment, materially reducing or eliminating relief on a classwide basis;

- Gen asserted constitutional defenses aimed at limiting or eliminating statutory damages;

- Gen maintained that, for a variety for reasons, a class could not be certified for litigation purposes or that if a class was certified, certification could not be maintained through trial. *See, e.g., Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (Lanza, J.) (denying motion to certify TCPA class); *Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same);

- Gen suggested that it maintains safeguards to ensure compliance with the TCPA. While Gen vehemently disputes any liability, to the extent any violations did occur, Gen argued that any violation of the TCPA was unintentional and would not support increased statutory damages; and

- Even had Ms. Jackson succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

The risk to Class Counsel, therefore, was substantial. More generally, without a settlement the parties would have had to continue with discovery, including additional depositions; brief both class certification and other merit-related issues; and try any issues not resolved on summary judgment, potentially in two separate cases. Appeals would almost certainly have followed. So given the work left to perform, significant litigation-related risks existed. *See, e.g., Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

No matter, in the face of real litigation-related risks, Class Counsel helped secure the noteworthy settlement at bar. This supports the requested attorneys' fee award. *See Gutierrez-Rodriguez v. RM Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) ("The Court finds further support for an upward

departure in the substantial risks of continued litigation, as well as the high quality of representation by class counsel, who brought this case on a contingency basis and received no compensation for their efforts [to date].”); *Spears v. First Am. Eappraiseit*, No. 08-CV-00868-RMW, 2015 WL 1906126, at *2 (N.D. Cal. Apr. 27, 2015) (awarding 35% of the $7,557,096.92 net settlement fund in a case where class counsel “faced at least three significant novel issues of law”).

### C. Class Counsel litigated this matter on a contingent basis.

“The risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees.” *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048). Here, Class Counsel litigated this matter on a contingent basis. *See* Declaration of Michael Greenwald, attached as Exhibit B, ¶¶ 57, 59. They accordingly faced a substantial risk of nonpayment for well over a year of work on this case and in related litigation. And the contingent nature of Class Counsel’s work therefore supports the requested attorneys’ fee award. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *14 (N.D. Cal. Aug. 17, 2018) (“Fourth, this case was conducted on a contingent-fee basis against well-represented Defendants. To be sure, Class Counsel were capable of fronting the costs, but the financial risk of litigation was assumed by Class Counsel throughout the pendency of the action. Moreover, the representation has lasted for nearly three years and the case schedule was compressed, thereby requiring Class Counsel to forego work on other matters.”); *Dakota Medical, Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 4180497, at *8 (E.D. Cal. Sept. 21, 2017) (awarding fees of 30% of common fund in TCPA class action and noting that “Class counsel here also faced a substantial risk of non-payment. As the court has already explained, this case was subjected to extensive and serious litigation, discovery, and motion practice. All three law firms representing the class here accepted the matter on a purely contingent basis. None would have been compensated at all absent a recovery for the class.”).

Additionally, a contingent fee arrangement like that which Class Counsel entered into here "weighs in favor of the requested attorneys' fees award, because [s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *accord Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1215 (S.D. Fla. 2006) ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent."). Indeed, as one district court noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("[T]he importance of ensuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *accord Clark v. City of L.A.*, 803 F.2d 987, 991 (9th Cir. 1986) ("The risk and delay involved in contingent fee arrangements have long been seen as justifications for the relatively large fees often resulting in contingency cases.").

And this is especially true where Class Counsel are two small firms, as is the case here. *See* Ex. B, ¶ 58; Declaration of Anthony Paronich, attached as Exhibit C, ¶¶ 28-30. This is because the amount of work small firms can handle at any given time is limited, so the time devoted to this case necessarily restricted Class Counsel's ability to accept

other work. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) (noting that the district court properly considered "the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work)"); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *13 (S.D. Fla. Nov. 5, 2015) ("It is uncontroverted that the attorney time spent on the Action was time that could not be spent on other matters. Consequently, this factor supports the requested fee."); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *21 (S.D. Tex. Jan. 23, 2015) ("By accepting this case, class counsel necessarily limited their ability to work on other cases. Four of Cohen Milstein's seven-lawyer Employee Benefits Practice Group spent more than 50 hours on this case. This factor supports the fee request."); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time.").

Correspondingly, that Class Counsel litigated this matter on a contingent basis supports their request for attorneys' fees in the amount of one-third of the common fund. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *7 (C.D. Cal. Apr. 2, 2018) ("approv[ing] an award of 38 percent of the common fund").

### D. Class Counsel used their unique experience and skill in connection with their significant efforts throughout this matter.

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012).

This action is no different, and Class Counsel relied on their skill and experience in litigating and negotiating the settlement here. *See Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) ("The Court further finds that Class Counsel—Michael L. Greenwald of Greenwald Davidson Radbil PLLC [and] Anthony I. Paronich of Paronich Law, P.C. . . .—have zealously

10

represented the interests of the Settlement Class. Because of Class Counsel's considerable efforts, Settlement Class Members will receive meaningful payments well in excess of most approved TCPA class action settlements."). Indeed, Class Counsel have a particular set of skills honed over years of practice, during which they were appointed as class counsel in dozens of class actions under the TCPA alone. *See* Ex. B, ¶¶ 11, 13-15, 18, 20, 23-25; Ex. C, ¶ 10.

In sum, Class Counsel relied on a wealth of skill and experience in obtaining an excellent result. *See* Ex. B, ¶¶ 27-42, 55-59, 62-63; Ex. C, ¶ 19-28, 33-34. And this substantial skill and experience support the requested attorneys' fee award. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 ("Moreover, the case presents complexities that required skill from the prosecuting attorneys. . . . This Court and other courts within this district have recognized that litigating complicated matters, especially unprecedented issues, is a circumstance that points in favor of a larger percentage.").

### E.  Courts often award as attorneys' fees one-third or more of the settlement fund in TCPA class actions.

Courts in the Ninth Circuit and nationwide frequently award attorneys' fees in the amount of one-third of the settlement fund in TCPA class actions. *See, e.g.*, *Arthur v. Or. Community Credit Union*, No. 6:24-cv-01700-MC, 2026 WL 103162, at *6 (D. Or. Jan. 14, 2026) (awarding one-third of common fund, plus expenses); *Head v. Citibank, N.A.*, No. 18-cv-08189-PCT-ROS, 2025 WL 226660, at *4 (D. Ariz. Jan. 14, 2025) (Silver, J.) (awarding fees of $9,833,333.33, which is one-third of $29.5 million common fund, plus expenses); *West v. Cal. Serv. Bureau, Inc.*, No. 4:16-cv-03124-YGR, ECF No. 128 (N.D. Cal. Jan. 23, 2019) (awarding 33.33% of the common fund); *Dakota Medical*, 2017 WL 4180497, at *9-10 (awarding fees of one-third of $25 million fund); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) ("Class Counsel request an assessment of fees in the amount of $15 million, or one-third of the common fund recovery. . . . The application for fees is thus approved.");

11

*Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% of common fund).

Likewise, numerous courts outside the Ninth Circuit have awarded attorneys' fees of one-third or more in TCPA class actions. *See, e.g.*, *Johnson v. Comodo Grp., Inc.*., No. 16-4469, 2026 WL 296417, at *8 (D.N.J. Feb. 4, 2026) (awarding fees of 40% of the common fund and finding that "[a] forty percent contingent fee is routinely negotiated in the open market."); *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *4 (M.D. Fla. July 10, 2025) (awarding fees of one-third of TCPA settlement fund); *Daugherty v. Credit Bureau Servs. Ass'n.*, No. 4:23-cv-01728, 2025 WL 1618354, at *6 (S.D. Tex. June 6, 2025) (same); *Cornelius*, 2025 WL 502089, at *3 (awarding fees of one-third of settlement fund); *Wesley v. Snap Fin., LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670, at *3 (D. Utah Feb. 7, 2023) (same); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 819CV00550CEHCPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding "a slight increase from the one-third benchmark"); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2019 WL 7066834, at *7 (M.D.N.C. Dec. 23, 2019) (awarding one-third of the common fund); *Sheean v. Convergent Outsourcing, Inc.*, No. 218CV11532GCSRSW, 2019 WL 6039921, at *4 (E.D. Mich. Nov. 14, 2019) (awarding one-third of the TCPA common fund); *Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *11 (N.D. Ill. Oct. 28, 2019) (awarding attorney's fees of 33.99% of the common fund); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding one-third of the common fund); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (awarding one-third of the common fund); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 807 (awarding 36% of the first $10 million); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding 36% of the common fund); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third of common fund); *Allen v.*

*JPMorgan Chase Bank, N.A.*, No. 13-cv-8285, ECF No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33% of the common fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding one-third of the common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-00215, ECF No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than one-third of the common fund).

Here, the requested fee represents one-third of the cash common fund, but only approximately 22.5 percent of the settlement's total economic value when the conservative remedial-relief valuation is included. This further supports the reasonableness of the requested fee under *Vizcaino*.

### F.  Additional factors support Class Counsel's request for an award of attorneys' fees.

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.  This is particularly important here, where, as previously noted, *see supra* Argument § I.A, damage awards under the TCPA—a statute that does not include a fee-shifting provision—are often too small to incentivize individual actions. And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a . . . factor when awarding class counsel attorneys' fees." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217 (citing *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992)) (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions").

The public policy fostered by the private attorney general role is, however, frustrated where a large defendant has the ability to overwhelm, for example, small-firm plaintiff's lawyers who typically represent consumers in TCPA actions. This is a reality that results from the fact that, as noted above, *see supra* Argument §§ I.B-C, Class Counsel were required to risk a significant amount of time, as well as out-of-pocket costs and expenses, to reach the result obtained. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any

incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.

Accordingly, a contingent attorneys' fee award that amounts to one-third of the common fund and 22.5 percent of the total settlement value is appropriate where "absent an award of [such fees] . . . the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self interest rather than obtaining real justice on behalf of their injured clients." *Id.* at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, MD. L. REV., 216, 225-26 (1983), for the principle that "the private attorney general provides an important mechanism 'to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies,' but in the absence of appropriate incentive structures, 'litigated judgments are few, cheap settlements are common, and . . . the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement'").

With this in mind, and considering the circumstances of this matter—the lack of incentive for aggrieved consumers to bring individual suits, that Gen is unquestionably an entity with means to litigate, and that Gen employed excellent legal counsel—Class Counsel's request for attorneys' fees is supported by the economics involved in litigating this matter. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 807 (performing in-depth analysis of risks inherent in TCPA class action litigation and determining a fee of 36% of first $10 million in recovery is proper).

## II. This Court should approve the reimbursement of $15,387.66 in litigation costs and expenses.

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *Carlin*, 380 F.

Supp. 3d at 1023; *see also Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2019 WL 1369929, at *8 (N.D. Cal. Mar. 26, 2019) ("An attorney is entitled to recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."). The award "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These costs can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees. *Torres v. Pick-A-Part Auto Wrecking*, No. 1:16-cv-01915-DAD-BAM, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018).

Class Counsel request the reimbursement of $15,387.66 in litigation costs and expenses necessarily incurred to litigate and resolve this matter on behalf of Settlement Class Members. *See* Ex. B, ¶¶ 70-74; Ex. C, ¶¶ 38-42. These expenses include case filing fees, *pro hac vice* application fees and related costs, travel expenses, deposition and transcript-related costs, and mediation fees. *See id.* (itemizing categories of expenses). Because Class Counsel's litigation costs and expenses are eminently reasonable in a class action like this, and were necessary to the successful resolution of this action, *see Carlin*, 380 F. Supp. 3d at 1024, this Court should approve them.

### III.    This Court should approve a $15,000 service award to Ms. Jackson.

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Here, Ms. Jackson respectfully requests that this Court approve a service award of $15,000 in recognition of her contributions toward the successful resolution of this litigation. Without Ms. Jackson's tenacious efforts, there would have been no lawsuit, let

alone the exceptional recovery for the Settlement Class. From the outset, Ms. Jackson's goal was to pursue this matter on a class-wide basis to seek redress for consumers harmed by Gen's calling practices, and there can be no dispute that she succeeded in her efforts.

But obtaining the result at bar was no small feat. Ms. Jackson devoted considerable time and energy to this case for over a year, which included reviewing and approving filings, searching for and gathering relevant documents, participating in strategy conferences with Class Counsel, subjecting herself to scrutiny, and participating in mediation. *See* ECF No. 21-2 (Declaration of Michelle Jackson); Ex. B, ¶¶ 65-68. In short, Ms. Jackson was a model class representative throughout this matter. Ex. B, ¶ 64; Ex. C, ¶¶ 35-37.

Given, therefore, Ms. Jackson's active participation in this matter, and as recognition for the superb results she delivered to Settlement Class Members, a service award of $15,000 is justified. *See, e.g.*, *Head*, 2025 WL 226660, at *4 (approving $15,000 service award to TCPA class representative); *Markos*, 2017 WL 416425, at *3 (approving service awards of $20,000 each in TCPA class action); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award from a $6.75 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to a TCPA class representative); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12–cv–215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

This Court should accordingly approve a service award to Ms. Jackson in the amount of $15,000.

**Conclusion**

Ms. Jackson respectfully requests that this Court award Class Counsel attorneys' fees of $3,316,666.66, approve the reimbursement of $15,387.66 in litigation costs and expenses reasonably incurred by Class Counsel, and approve a service award of $15,000 to Ms. Jackson for her service to the Settlement Class. Ms. Jackson will submit a proposed order for this Court's consideration in connection with her forthcoming motion for final approval of the parties' class action settlement.


Dated: March 9, 2026                    Respectfully submitted,

                                        */s/ Michael L. Greenwald*
                                        Michael L. Greenwald
                                        Greenwald Davidson Radbil PLLC

                                        */s/ Anthony I. Paronich*
                                        Anthony I. Paronich
                                        Paronich Law, P.C.

                                        Class Counsel