IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Jackson, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>Gen Digital Inc.,<br><br>Defendant. | No.: 2:25-cv-00535-MTL<br><br>**DECLARATION OF ANTHONY PARONICH IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND A SERVICE AWARD** |

I, Anthony Paronich, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Anthony Paronich.

2. I am over twenty-one years of age.

3. I am fully competent to make the statements contained in this declaration.

4. I am admitted to practice before this Court *pro hac vice*.

5. I submit this declaration in support of Plaintiff's motion for attorneys' fees, expenses, and a service award.

6. I am a 2010 graduate of Suffolk Law School. In 2010, I was admitted to the Bar in Massachusetts. Since then, I have been admitted to practice before the Federal District Court for the District of Massachusetts, the Northern District of Illinois, the Eastern District of Michigan, the Western District of Wisconsin, the Southern District of Indiana, the First Circuit Court of Appeals, the Seventh Circuit Court of Appeals, and the Ninth Circuit Court of Appeals. From time to time, I have appeared in other State and Federal District Courts *pro hac vice*. I am in good standing in every court to which I am admitted to practice.

7. I was an associate at Broderick Law, P.C. in Boston, Massachusetts from 2010 through 2016.

8. I was a partner at Broderick & Paronich, P.C. in Boston, Massachusetts from 2016 through 2019.

9. In 2019, I started Paronich Law, P.C., focused on protecting consumers in class action lawsuits.

10. I have been appointed class counsel in more than 50 TCPA cases, including the following:

    i. Desai and Charvat v. ADT Security Services, Inc., USDC, N.D. Ill., 11-CV-1925, a TCPA class settlement of $15,000,000 granted final approval on June 21, 2013.

    ii. Jay Clogg Realty Group, Inc. v. Burger King Corporation, USDC, D. Md., 13-cv-00662, a TCPA class settlement of $8,500,000 granted final approval on April 15, 2015.

    iii. Charvat v. AEP Energy, Inc., USDC, N.D. Ill., 1:14-cv-03121, a TCPA class settlement of $6,000,000 granted final approval on September 28, 2015.

    iv. Bull v. US Coachways, Inc., USDC, N.D. Ill., 1:14-cv-05789, a TCPA class settlement finally approved on November 11, 2016 with an agreement for judgment in the amount of $49,932,375 and an assignment of rights against defendant's insurance carrier.

    v. Smith v. State Farm Mut. Auto. Ins. Co., et. al., USDC, N.D. Ill., 1:13-cv-02018, a TCPA class settlement of $7,000,000.00 granted final approval on December 8, 2016.

    vi. Mey v. Frontier Communications Corporation, USDC, D. Conn., 3:13-cv-1191-MPS, a TCPA class settlement of $11,000,000 granted final approval on June 2, 2017.

    vii. Heidarpour v. Central Payment Co., USDC, M.D. Ga., 15-cv-139, a TCPA class settlement of $6,500,000 granted final approval on May 4, 2017.

    viii. Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc., USDC, N.D. Ga., 1:15-CV-03562-AT, a TCPA class settlement of $12,000,000 granted final approval on December 14, 2017.

    ix. Abante Rooter and Plumbing, Inc. v. Pivotal Payments, Inc., USDC, N.D. Ca., 3:16-cv-05486-JCS, a TCPA class settlement of $9,000,000 granted final approval on October 15, 2018.

    x. In re Monitronics International, Inc., USDC, N.D. W.Va., 1:13-md-02493-

|     |       |
| --- | ----- |
|     | JPB-JES, a TCPA class settlement of $28,000,0000 granted final approval on June 12, 2018. |
| xi. | Krakauer v. Dish Network, L.L.C., USDC, M.D.N.C., 1:14-CV-333 on September 9, 2015.  Following a contested class certification motion, this case went to trial in January of 2017 returning a verdict of $20,446,400. On May 22, 2017, this amount was trebled by the Court after finding that Dish Network's violations were "willful or knowing", for a revised damages award of $61,339,200. (Dkt. No. 338). The Fourth Circuit Court of Appeals unanimously affirmed the judgment in May of 2019. *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019). The United States Supreme Court rejected *certiorari* of this matter in December 2019. *See DISH Network L.L.C. v. Krakauer,* 140 S. Ct. 676 (2019). |
| xii. | Charvat v. Carnival Corporation & PLC, et. al., USDC, ND. Ill., 1:13-cv-00042, a TCPA class settlement of $12,500,000 granted final approval in April of 2020. |
| xiii. | Loftus v. Sunrun, Inc., USDC, N.D. Ca.., 3:19-cv-1608, a TCPA class settlement of $5,500,000 granted final approval on May 11, 2021. |
| xiv. | Andrew Perrong v. Orbit Energy & Power, LLC, USDC, E.D. PA., Civil Action No. No. 2:21-cv-777. A class settlement of $6,000,000 granted final approval on June 21, 2022. |
| xv. | David Vance, et. al. v. DirecTV, LLC, USDC, N.D. WV., Civil Action No. 5:17-cv-179. A class settlement of $16,850,000 granted final approval on August 24, 2023. |
| xvi. | Berman v. Freedom Financial Network, LLC et al, N.D. CA., Civil Action No. 18-cv-1060. A class action settlement of $9,750,000 granted final approval on February 23, 2024 |
| xvii. | Murray v. Grocery Delivery E-Services USA, Inc. D. MA. Civil Action No. 19-cv-12608. A class action settlement of $11,000,000 granted final approval on March 13, 2024. |
| xviii. | Williams v. Choice Health Insurance LLC, M.D. AL., Civil Action No. 23-cv-292. A class action settlement of $7,000,000 granted final approval on July 22, 2024 |
| xix. | Smith, et. al. v. Assurance IQ, LLC, Civil Action No. 23-ch-09225 (Ill.). A class action settlement of $21,875,000, granted final approval on September 3, 2024. |

11. My firm has no known conflicts with the proposed settlement class.

**The Settlement**

12. By any measure, the settlement is a tremendous result for the Settlement Class.

13. The settlement required Gen Digital Inc. ("Gen") to create a non-reversionary common fund of $9,950,000.00, which is invested in FDIC-insured, interest-bearing accounts pending the settlement approval process.

14. It is expected that the settlement fund will exceed $10 million when the time comes to distribute payments.

15. There is no clear-sailing provision with respect to attorneys' fees, costs, or expenses. As a result, Gen may object to these amounts if it chooses to do so.

16. The settlement fund is all cash, with no coupon or voucher component.

17. No settlement funds will revert to Gen.

18. In addition, Gen will institute meaningful prospective changes to its calling practices to help ensure that it does not place calls with an artificial or prerecorded voice to persons who are not its customers or accountholders. To that end, Gen will utilize the Federal Communications Commission's Reassigned Numbers Database and will not place calls with an artificial or prerecorded voice to telephone numbers that are permanently disconnected and made available for reassignment after Gen obtained consent to call the telephone number.

19. The parties reached this settlement after nearly a year of litigation that included written discovery, Gen's document production, a deposition, and numerous meet-and-confer conferences aimed at identifying potential class members.

20. Moreover, the parties reached this settlement only after attending mediation with the Hon. Diane M. Welsh (Ret.) of JAMS. As part of the mediation process, the parties exchanged detailed briefs regarding the facts and central legal arguments of this case.

**Paronich Law also litigated a related case of *Lewis v. Gen Digital Inc.***

21. In addition to the matters identified above, I served as counsel for the plaintiff in *Lewis v. Gen Digital Inc.*, No. 2:25-cv-00647-SMB (D. Ariz.), a putative TCPA class action before the Honorable Susan M. Brnovich.

22. In *Lewis*, the plaintiff alleged that Gen used an artificial or prerecorded voice to place non-emergency calls to a cellular telephone number assigned to Ms. Lewis, despite the fact that she did not have an account with Gen and did not owe any debt to Gen. The prerecorded messages were directed to an individual named "Raymond" and referenced alleged payment issues and cancellation of a Norton360 with LifeLock account. *See Lewis v. Gen Digital Inc.*, No. 2:25-cv-00647-SMB (D. Ariz.), ECF No. 1 ¶¶ 18–19.

23. The proposed class in *Lewis* was defined as: All persons throughout the United States (1) to whom Gen Digital, Inc. placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person with an account in collections with Gen Digital, Inc., (3) in connection with which Gen Digital, Inc. used an artificial or prerecorded voice, (4) from four years prior to the filing of the complaint through the date of class certification.

24. I drafted the Class Action Complaint in *Lewis*, investigated the factual basis for the claims, analyzed Defendant's prerecorded calling practices, and developed the class definition tailored to individuals who did not have accounts in collections with Gen. *See id.*

25. After Gen answered the complaint and moved to dismiss or stay the case pursuant to the first-to-file rule, I prepared and filed a detailed opposition addressing the discretionary nature of the first-to-file doctrine and distinguishing the factual underpinnings of the prerecorded calls at issue in *Lewis* from those alleged here. *Id.*, ECF No. 15.

26. Ultimately, the Court stayed the *Lewis* matter pending the resolution of this matter, and the case was later resolved following the settlement proceedings here. My work in *Lewis* required additional investigation into Gen's prerecorded calling campaigns,

development of class allegations tailored to a distinct subset of affected consumers, and briefing on procedural and strategic issues directly bearing on the coordination of overlapping TCPA actions in the District of Arizona.

### Paronich Law Devoted Considerable Resources to these Cases

27. The parties reached this settlement after a year of litigation that included written discovery and document productions, a deposition pursuant to Rule 30(b)(6), and significant briefing in connection with mediation.

28. The road to the settlement required a significant investment of time and resources.

29. Paronich Law has handled this case on a contingency basis.

30. Paronich Law is a small law firm, with only two attorneys.

31. While all class litigation is risky, this case presented additional unique risks. These included the ever-evolving case law surrounding the TCPA, as well as class certification decisions adverse to TCPA plaintiffs. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (Lanza, J.); *Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019).

32. In addition, Gen maintained that the vast majority of the calls it places are made for "emergency purposes" and therefore are not actionable. 47 U.S.C. § 227(b)(1)(A).

33. Paronich Law attorneys have spent hundreds of hours litigating this case and *Lewis*, accumulating a sizable lodestar, particularly for a small firm with two attorneys.

34. In light of the excellent results achieved in this case, together with counsel's considerable efforts in achieving those results, the novelty and difficulty of the legal questions involved, that Class Counsel litigated this matter on a contingent basis, the experience, reputation, and ability of Class Counsel, and the public service provided by way of Class Counsel's and Ms. Jackson's roles as private attorneys general with respect to the TCPA, I firmly believe the settlement is fair, reasonable, and adequate, and that the

attorneys' fee requested as a percentage of the common fund is fair and reasonable.

### Service Award

35. Ms. Jackson has been a model class representative.

36. Without Ms. Jackson's considerable efforts and dedication to this case, the class settlement would not have been possible. *See* ECF No. 21-2 (Declaration of Michelle Jackson).

37. Given this, and considering the time and effort Ms. Jackson devoted to this case as well as the results achieved for the Settlement Class, I firmly believe that a service award in the amount of $15,000 is fair and reasonable.

### Reimbursement of Litigation Expenses

38. Paronich Law separately requests the reimbursement of expenses reasonably incurred in connection with the prosecution of this action.

39. Such expenses are reflected in the books and records maintained by undersigned counsel, which are an accurate recording of the expenses incurred.

40. To date, Paronich Law has incurred reimbursable litigation costs and expenses in the total amount of $3,310.

41. These expenses include the filing fee for the complaint in *Lewis* ($405); *pro hac vice* admission fees and related costs ($150); and travel-related and other expenses for the upcoming final fairness hearing (total of $2,755).

42. As well, Paronich Law incurred additional reimbursable expenses, such as for computerized legal research and telephone charges. Those expenses are not separately itemized herein, and Paronich Law does not seek separate reimbursement for them.

43. For the reasons set forth herein and in the accompanying motion, I respectfully request that this Court grant Ms. Jackson's motion for attorneys' fees, expenses, and a service award.

7

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 9, 2026.              By: *s/ Anthony Paronich*
                                              Anthony Paronich