Michael L. Greenwald (*admitted pro hac vice*)
James L. Davidson (*admitted pro hac vice*)
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
(561) 826-5477
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Anthony Paronich (*admitted pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

Class Counsel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michelle Jackson, *on behalf of herself and others similarly situated*, | ) ) ) | No.: 2:25-cv-00535-MTL |
| Plaintiff, | ) ) | |
| v. | ) ) | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Gen Digital Inc., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**Introduction**

With the assistance of experienced mediator Hon. Diane M. Welsh (Ret.) of JAMS and after nearly a year of contested litigation involving two separate cases, Michelle Jackson ("Plaintiff") and Gen Digital Inc. ("Gen") reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] To that end, Gen created a non-reversionary, all-cash common fund in the amount of $9.95 million for the benefit of Settlement Class Members ("Settlement"),[2] which has been invested in interest-bearing accounts and now exceeds $10 million. Each of the approximately 10,750 participating Settlement Class Members stands to receive more than $585.[3] This is a tremendous result in light of the serious risks and uncertainties associated with continued litigation.

In addition to the substantial monetary payment, Gen will institute practice changes to help it avoid placing prerecorded calls to persons who are not its customers in the future. To that end, Gen will utilize the Federal Communications Commission's ("FCC") Reassigned Numbers Database[4] to help it avoid placing calls with an artificial

---

[1] Shortly after Plaintiff filed the instant case, a different plaintiff filed a proposed class action against Gen asserting similar violations of the TCPA. *See Lewis v. Gen Digital Inc.*, No. 2:25-cv-00647-SMB (D. Ariz.). This settlement covers both actions.

[2] Capitalized terms not defined herein have the same meanings set forth in the parties' settlement agreement ("Agreement"), which was previously filed with this Court. ECF No. 21-1 at 12-68.

[3] This expected per-claimant recovery accounts for expected notice and administration costs; an award of attorneys' fees, costs, and litigation expenses; and a service award to Ms. Jackson. *See* ECF No. 24. The per-claimant recovery may change if additional late claims are received or if any claims are discovered to be duplicates or otherwise invalid. Plaintiff will update the Court at the July 14 fairness hearing.

[4] *See* https://www.fcc.gov/reassigned-numbers-database (last visited May 29, 2026) ("The FCC's Reassigned Numbers Database (RND) is designed to prevent a consumer from getting unwanted calls intended for someone who previously held their phone number. Callers can use the database to determine whether a telephone number may have been reassigned so they can avoid calling consumers who do not want to receive the calls.").

1

or prerecorded voice to cellular telephone numbers that are permanently disconnected and made available for reassignment after Gen obtained consent to call the numbers. These practice changes deliver real-world, forward-looking benefits, conservatively valued at an additional $4.788 million. *See* ECF No. 24-1 (Report of Jon Haghayeghi, Ph.D.). In short, the Settlement—with a total value of at least $14,738,000—constitutes an objectively excellent result.

This Court preliminarily approved the Settlement on January 28, 2026. *See* ECF No. 23. Thereafter, the class administrator—Kroll Settlement Administration LLC ("Kroll")—sent the Court-approved notice by U.S. Mail, with a detachable claim form, to potential Settlement Class Members. In addition, Kroll published notice of the Settlement, including on a dedicated website, www.JacksonIVRsettlement.com. After a robust notice campaign, no objections were made to the Settlement, and only 17 people[5] excluded themselves from it.[6] Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act. In light of the Settlement's superb benefits and the lack of opposition from Settlement Class Members, Plaintiff respectfully requests that this Court finally approve the Settlement and enter the accompanying agreed order and final judgment.

**Summary of the Class Settlement**

**I.      Plaintiff alleges that Gen violated the TCPA by placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers. Gen denies it violated the TCPA.**

Congress enacted the TCPA in 1991 to address privacy and harassment concerns arising from certain calling practices that escaped state invasion of privacy and nuisance

---

[5]      Several of those who submitted requests for exclusion also disclaimed class membership by stating they either never received calls from Gen or were Gen customers. As a result, these persons were never Settlement Class Members to begin with. Nonetheless, the parties have treated these persons as if they excluded themselves from the Settlement Class.

[6]      The deadline for objections and exclusions was April 13, 2026. *See* ECF No. 23 at 14.

2

statutes by operating interstate. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (2012).[7] To that end, "[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using any automatic telephone dialing system or an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . . .'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011).

The claims at issue here are relatively straightforward: Gen placed calls, in connection with which it used an artificial or prerecorded voice, to Plaintiff's cellular telephone number regarding a LifeLock account, even though Plaintiff was never a Gen customer or accountholder. Gen made these calls while attempting to reach its own customers regarding their LifeLock or Norton accounts. Gen called Plaintiff because its customer provided Plaintiff's telephone number as a contact number. At issue is whether these claims, and those of similarly situated consumers, violate the TCPA. Gen maintains that it did not violate the TCPA, that it was entitled to rely on consent that its customers provided, that other persons could have provided valid consent on Plaintiff's behalf, that its calls were made for "emergency purposes" and therefore are not actionable, and that, regardless, class certification (other than for settlement purposes) is improper.

A caller has a complete defense to a TCPA claim if it can demonstrate that it made calls with the prior express consent of the called party. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). As well, the TCPA exempts from liability calls "made for emergency purposes[.]" 47 U.S.C. § 227(b)(1)(A).

**II.    Despite facing significant obstacles to proving liability and attaining and maintaining class certification, Plaintiff's substantial litigation efforts resulted in the Settlement now before this Court.**

Gen vehemently disputes that it violated the TCPA and raised a host of defenses, both on the merits and to class certification. For example:

- Gen intended to move for summary judgment, asserting, among other things, that it could reasonably rely on consent to call provided by its customers and

---

[7]    Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

that class members must individually demonstrate receipt of prerecorded voice messages. If this Court accepted Gen's position, Plaintiff's claims—and those of Settlement Class Members—would fail;

- Gen further contended that non-customers could and do consent to receiving prerecorded calls and that for those persons, issues of prior express consent would defeat their claims;

- Gen also maintained that the vast majority of the calls it made were for "emergency purposes" and therefore are not actionable. 47 U.S.C. § 227(b)(1)(A). Gen makes these calls to its LifeLock customers for the purpose of delivering time-sensitive alerts regarding financial activity that may pose a risk to the customer, such as the appearance of the customer's personal information on the dark web, data breaches involving the customer's personal information, unusual credit card charges, the opening of a new credit account under the customer's name, opening of a new buy-now-pay-later loan in the customer's name, and a change in the customer's credit score—all of which may be signs of identity theft. As with its consent defense, if this Court found Gen's calls to be protected by the "emergency purposes" exception, Plaintiff's claims—and those of Settlement Class Members—would fail;

- Gen asserted that some or all claims are subject to binding arbitration and an individual (non-class) dispute resolution clause (including a class-action waiver), which—if enforced—could require individualized proceedings and preclude class treatment, materially reducing or eliminating relief on a classwide basis;

- Gen asserted constitutional defenses aimed at limiting or eliminating statutory damages;

- Gen maintained that, for a variety for reasons, a class could not be certified for litigation purposes or that if a class was certified, certification could not be maintained through trial. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (Lanza, J.) (denying motion to certify TCPA class); *Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same);

- Gen suggested that it maintains safeguards to ensure compliance with the TCPA. While Gen vehemently disputes any liability, to the extent any violations did occur, Gen argued that any violation of the TCPA was unintentional and would not support increased statutory damages; and

- Even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory

damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

Against this backdrop, and after conducting significant fact discovery and extensive meet-and-confer efforts to identify potential class members and explore the contours of Gen's defenses, the parties attended mediation on November 21, 2025 before Judge Welsh.[8]

**III.    The Settlement provides for a non-reversionary common fund for the benefit of Settlement Class Members that exceeds $10 million with accumulated interest, as well as important practice changes.**

The Agreement defines a Settlement Class under Rule 23(b)(3) comprised of:

All persons throughout the United States (1) to whom Gen Digital Inc. placed, or caused to be placed, a call regarding a LifeLock or Norton account, (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a person who has or had a LifeLock or Norton account with Gen Digital Inc., (3) in connection with which Gen Digital Inc. used or caused to be used an artificial or prerecorded voice, (4) from February 19, 2021 to October 30, 2025.

Participating Settlement Class Members who received one or more artificial or prerecorded voice calls from Gen regarding a LifeLock or Norton account between February 19, 2021 and October 30, 2025 and who never were LifeLock or Norton customers will receive a *pro-rata* share of the settlement fund, after attorneys' fees, costs, expenses, and a service award for Plaintiff are deducted. Based on the approximately 10,750 claims received to date, it is expected that each claimant will receive more than $585. In exchange, Settlement Class Members will release their claims arising out of calls Gen placed to their cellular telephones during the class period.

In addition to the substantial monetary relief, Gen will institute practice changes designed to materially reduce the likelihood that consumers who are not Gen's customers

---

[8]    *See* https://www.jamsadr.com/welsh/ (last visited May 29, 2026) ("Over the past 32 years, as a JAMS neutral and a United States Magistrate Judge, she has successfully resolved over 5,000 matters, covering virtually every type of complex dispute. Specifically, Judge Welsh has extraordinary skill in resolving high-stakes multi-party commercial disputes, employment matters, catastrophic personal injury cases, class actions, mass torts and multi-district litigations (MDL's).").

receive future prerecorded calls. These measures provide continuing benefits beyond the Settlement Class by promoting compliance-focused calling practices and reducing unwanted and intrusive calls. Dr. Jon Haghayeghi, Ph.D., a forensic economist at J. Herbert Burkman & Associates, was retained to assess the economic value of these practice changes using a market-based, willingness-to-pay methodology—a methodology that has been accepted without exclusion by courts in every matter in which it has been submitted. *See* ECF No. 24-1 at 2-5. Specifically, Dr. Haghayeghi measures the value consumers place on freedom from unwanted prerecorded calls by reference to the actual prices consumers pay in the marketplace for call-blocking services—products such as Verizon Call Filter Plus, RoboKiller, AT&T ActiveArmor Advanced, and YouMail Plus, which are used by millions of Americans. *See* ECF No. 24-1, Appendix 1. Using the median commonly observed market price, Dr. Haghayeghi conservatively estimated the aggregate value of the practice changes at approximately $4,788,000. *See* ECF No. 24-1 at 9. Combined with the $9.95 million cash fund (plus interest), the Settlement delivers total relief valued at no less than $14,738,000.

Finally, the parties and Kroll have implemented a robust, industry standard notice program, including direct mail notice to each potential Settlement Class Member who could be identified and the creation of a dedicated settlement website and toll-free telephone number, through which Settlement Class Members could submit claims and obtain more information about this case and Settlement.

**Class Notice and Claims**

Kroll successfully delivered notice to potential Settlement Class Members in accordance with this Court's Preliminary Approval Order. *See* Declaration of Andrea Dudinsky ("Dudinsky Dec."), attached as Exhibit A.

*Direct Mail Notice*: Kroll delivered direct mail notice, via U.S. Mail, to potential Settlement Class Members, which included summary notice of the Settlement and a detachable, straightforward claim form. Kroll identified names and addresses of potential

Settlement Class Members by performing reverse look ups of potentially impacted telephone numbers identified by Gen. *See id*., ¶¶ 6, 10-12.

*Settlement Website*: In addition, Kroll established and maintains a website dedicated to the Settlement—http://www.JacksonIVRsettlement.com—that includes information pertinent to Settlement Class Members such as court filings, as well as answers to frequently asked questions. *Id*., ¶ 5. Settlement Class Members were able to view notice documents and submit claims via the settlement website. *Id*.

*Toll-Free Information Line*: Kroll established and maintains a toll-free telephone number—(833) 319-6685—for Settlement Class Members to obtain information about the Settlement. *Id*., ¶ 7.

*Claims*: As of May 13, 2026, Kroll received approximately 10,750 unique claims. *Id*., ¶ 14. Of these, 284 were deemed deficient, and an opportunity to cure is being provided to these claimants. *Id*., ¶ 15.

*17 exclusions*: Seventeen people excluded themselves from the Settlement. *Id*., ¶ 20. As noted, several of these persons disclaimed class membership by stating they did not receive a call from Gen or were Gen customers.

*No objections*: No Settlement Class Members objected to the Settlement, nor did any government official in response to notice provided in compliance with the Class Action Fairness Act. *Id*., ¶¶ 4, 20.

**Argument**

**I.   This Court should confirm its certification of the Settlement Class.**

This Court previously certified this matter as a class action and, in doing so, appointed Plaintiff as the class representative and her counsel—Michael L. Greenwald of Greenwald Davidson Radbil PLLC and Anthony Paronich of Paronich Law, P.C.—as Class Counsel. ECF No. 23 at 2, 5.

Because nothing has changed in the interim warranting a departure from this Court's reasoning, Plaintiff respectfully submits that this Court should confirm its certification of the Settlement Class.

**II.     The Settlement is fair, reasonable, and adequate under Rule 23(e).**

The Ninth Circuit instructs courts to consider eight factors in analyzing the fairness, reasonableness, and adequacy of a class action settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23(e) likewise requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided by the principle that class action settlements are favored. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits").

Courts also should ensure that class action settlements do not contain any hallmarks of unfairness. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). An "obvious deficiency" to a class action settlement can include one or more of the *Bluetooth* factors: (1) when counsel receives a disproportionate distribution of the settlement or where the class receives no monetary distribution; (2) when the parties negotiate a clear-sailing agreement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class. *Id*.

None of these factors is present here. The settlement fund is non-reversionary, meaning no money will be returned to Gen. The Settlement contains no coupon or voucher component. Nor does the Settlement Agreement contain any provision—express

or implied—under which Gen agreed not to oppose, or to limit its opposition to, any particular fee amount. The absence of any such clear-sailing arrangement eliminates one of the primary *Bluetooth* concerns, as the requested attorneys' fees carry no risk of tainting the Settlement through a side arrangement between counsel and Gen. *See In re Bluetooth*, 654 F.3d at 948 (identifying clear-sailing agreements as a potential indicator of collusion because they may indicate that class counsel have allowed pursuit of their own self-interests to infect the negotiations).

Furthermore, the Settlement is not conditioned upon the award of any fee. And finally, participating Settlement Class members will receive significant compensation—more than $585 each—in addition to prospective relief.

As detailed below, each of the relevant factors firmly supports the fairness, reasonableness, and adequacy of the Settlement.

**A. The strengths of Plaintiff's case and the risks inherent in continued litigation against Gen, and attaining class certification, favor approval.**

The first, second, and third *Hanlon* factors support final approval. Of course, every class action involves some level of uncertainty, both on the merits and on the appropriateness of class certification. This case is no different, as there was no guarantee that Plaintiff would attain and maintain certification of the class through trial or that this Court, or the trier of fact, would find in Plaintiff's favor as to liability.

While Plaintiff strongly believes in her claims, Gen vigorously disputes that it violated the TCPA. Moreover, this case unfolded during a time of particular flux regarding the TCPA, with divergent opinions being issued from district courts on an ongoing basis. Against that backdrop, Gen raised a host of defenses, both on the merits and to the maintenance of class certification. *See* Summary of the Class Settlement, *supra*. Thus, there can be little question that Plaintiff faced real risks in prevailing on her claims and attaining and maintaining certification of the class through trial.

There is also no doubt that, absent settlement, the parties faced years of protracted litigation, including summary judgment motions, additional discovery, trial, and appeals.

Considering that this case has already been pending for well over a year, the risk, expense, complexity, and likely duration of further litigation also support approval.

### B. The immediate, meaningful cash relief afforded by the Settlement, plus important practice changes, favors approval.

For this same reason, the fourth *Hanlon* factor—the amount offered in the settlement—also favors approval. To reiterate, Gen has paid $9.95 million into a settlement fund to resolve this matter—an amount that is significant in its own right. There is no coupon component to this all-cash settlement, and no funds will revert to Gen. Moreover, the fund is invested in FDIC-insured, interest-bearing accounts, assuring that more than $10 million will be available by the time the fund is distributed.

This fund compares favorably to other recoveries in TCPA class actions. *See, e.g.*, *Mannacio v. Sovereign Lending Grp. Inc.*, No. 3:22-cv-05498-TMC, 2023 WL 6389792 (W.D. Wash. Oct. 2, 2023) (preliminarily approving $500,000 TCPA class action settlement, with expected per-claimant recovery of $115); *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($5 million, which amounted to $77.10 per potentially affected telephone number); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lalli v. First Team Real Estate—Orange Cty.*, No. 8:20-cv-27-JWH, ADS, 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) (approving $478,500 TCPA settlement amounting to $110 per class member); *Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (wrong-number TCPA settlement amounting to $1.269 million, or $7 per class member); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) (wrong-number TCPA settlement for $5.55 per person); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla. Jan. 30, 2015) (approving wrong-number TCPA class action for $2.63 per person, settling claims of 3 million class members for $7.9 million).

In addition, participating Settlement Class Members will receive more than $585 each, an amount higher than many other Court-approved TCPA settlements. *See, e.g.*,

*Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *3 (M.D. Fla. July 10, 2025) ("The per-claimant recovery of over $146 provides class members with monetary relief that exceeds other approved TCPA class action settlements.") (collecting cases); *Daugherty v. Credit Bureau Servs. Ass'n.*, No: 4:23-cv-01728, 2025 WL 1618354, at *3 (S.D. Tex. June 6, 2025) ("And notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements."); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.") (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action)). *See also Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101).[9]

---

[9]    *See also, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944-45 (D. Minn. 2016) ($33.20 per claimant, which the court characterized as "compar[ing] favorably with settlements in other TCPA class actions."); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1047 (S.D. Cal. 2015) (approving TCPA settlement in which class members received $13.75 each).

What's more, the Settlement requires important practice changes that will benefit Settlement Class Members—and the general public—in the future, valued at an additional more than $4.75 million. ECF No. 24-1.

In sum, the Settlement constitutes an objectively excellent result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### C. The posture of this case and experience and views of counsel favor approval.

Next, the fifth and sixth *Hanlon* factors likewise support approval. After nearly a year of contested litigation in two separate class actions—which included written discovery and document productions, a deposition pursuant to Rule 30(b)(6), and significant briefing in connection with mediation—the Settlement was achieved with a clear view as to the strengths and weaknesses of Plaintiff's case and Gen's defenses.

Thus, both Class Counsel—who have substantial experience in litigating TCPA class actions[10]—and this Court are adequately informed to evaluate the fairness of the Settlement. Moreover, Plaintiff and Class Counsel firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

Further, the parties' arm's-length settlement negotiations through experienced counsel, and after attending mediation with Judge Welsh, demonstrate the fairness of the Settlement, and that the Settlement is not a product of collusion. Indeed, this Court stated

---

[10]    *See* ECF Nos. 21-1, 21-3, 24-2, 24-3.

in its Preliminary Approval Order that it considered that "the proposal was negotiated at arm's length." ECF No. 23 at 8. This is consistent with similar findings nationwide. *See Patterson v. OptumRX, Inc.*, No. 1:24-cv-00689-TWP-KMB, 2026 WL 881674, at *2 (S.D. Ind. Mar. 31, 2026) ("Moreover, the Parties reached an agreement to resolve this matter only after mediating Plaintiff's claims against Defendant with Hon. Diane M. Welsh (Ret.) of JAMS. The settlement is therefore not a product of collusion but was the result of arm's-length settlement negotiations, as directed by an experienced class action mediator."); *Bykov v. DC Transp. Servs., Inc.*, No. 2:18-cv-1691 DB, 2019 WL 1430984, at *5-6 (E.D. Cal. Mar. 29, 2019) ("participation in mediation tends to support the conclusion that the settlement process was not collusive"); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) ("Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement.").

### D. The lack of objections to the Settlement by any governmental agency underscores its fairness.

While no governmental agency is a party to this lawsuit, Kroll notified all pertinent government officials of the Settlement as required by the Class Action Fairness Act. Dudinsky Dec., ¶ 4. No governmental entity raised objections or concerns about the Settlement. *See id*. This factor therefore supports final approval.

### E. The extraordinarily positive reaction from Settlement Class Members—with no objections and very few exclusions—strongly supports final approval of the Settlement.

After a robust notice program that included direct mail notice and publication notice, approximately 10,750 Settlement Class Members submitted claims, while only 17 persons submitted exclusion requests. *Id*., ¶¶ 14, 20. No Settlement Class Members objected to any aspect of the Settlement. *Id*., ¶ 20.

The lack of objections, and few exclusions, strongly supports approval of the Settlement. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to

13

the class members."); *Schuchardt*, 314 F.R.D. at 686 ("The Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at \*5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Arnold v. Ariz. Dep't of Pub. Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at \*10 (D. Ariz. July 31, 2006) (Anderson, M.J.) ("The absence of any objections suggests that the class members are unopposed to terms of the Settlement Agreement. The absence of objections weighs in favor of approving the Settlement Agreement.").

### F.  The Settlement treats Settlement Class Members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all class members equitably. Here, each Settlement Class Member will be treated equitably as each participating Settlement Class Member will receive an equal portion of the common fund after deducting attorneys' fees, expenses, and a service award, and will provide the same release to Gen. *See Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, 2025 WL 502089, at \*2 (S.D. Ga. Feb. 13, 2025) ("In addition, because each participating Settlement Class Member will receive the same recovery, the settlement treats class members equitably relative to one another."); *Vu v. I Care Credit, LLC*, No. 17-cv-04609 RAO, 2022 WL 22871480, at \*11 (C.D. Cal. Nov. 4, 2022) ("Here, each member had to submit the same claim form to receive a distribution from the settlement fund and each member who submitted a claim form will receive an equal distribution. As the class members' TCPA claims are based on the same fax advertisements, equal distributions are fair.").

Moreover, the release affects each Settlement Class Member in the same way. As such, this factor also supports approval of the Settlement.

14

### G. Plaintiff and Class Counsel have adequately represented the Settlement Class.

Lastly, Rule 23(e)(2)(A) requires that this Court determine that "the class representatives and class counsel have adequately represented the class." This Court previously found that Plaintiff and her counsel adequately represented the Settlement Class. *See* ECF No. 23 at 5 ("Indeed, courts have not only appointed class counsel as class counsel in dozens of consumer protection class actions in the past few years alone, but many have also taken care to highlight the firm's wealth of experience and skill.").

Based on the excellent results obtained for Settlement Class Members and the high-quality work necessary to do so, Plaintiff and her counsel have demonstrated that they adequately represented the Settlement Class, and this Court should grant final approval to the Settlement. *See Arthur v. Or. Comm. Credit Union*, No. 6:24-cv-01700-MC, 2026 WL 103162, at *4 (D. Or. Jan. 14, 2026) (granting final approval to TCPA class action settlement and noting: "As well, class counsel [GDR]—who have substantial experience in litigating TCPA class actions—firmly believe the settlement is fair, reasonable, and adequate, and in the best interests of settlement class members.").

## III.    Distribution of class notice more than satisfied due process requirements.

Pursuant to Rule 23(e), in granting preliminary approval, this Court directed that Kroll initiate the proposed notice plan, finding that "[t]he proposed notice and method for notifying the settlement class members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice." ECF No. 23 at 8-9; *see also Williams*, 2019 WL 1450090, at *5 (approving materially identical notice plan in wrong-number TCPA class action). Such notice must be—and was—the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Following this guidance, Kroll distributed notice in the manner directed by the Court's Preliminary Approval Order and that exceeded this standard. In particular, Kroll used all reasonable efforts to provide direct mail notice to each potential Settlement Class Member. *See generally* Dudinsky Dec. And Kroll supplemented this direct mail notice through a dedicated settlement website and toll-free telephone number. *Id*.

Given this robust and overinclusive Court-approved notice campaign, *see* ECF No. 23 at 8-9. that approximately 10,750 Settlement Class Members submitted claims further supports approval. In summary, the notice plan amply protected Settlement Class Members' due process rights.

## Conclusion

Plaintiff respectfully submits that the Settlement constitutes an excellent result for Settlement Class Members who will receive substantial cash payments and important forward-looking relief. For the foregoing reasons, Plaintiff respectfully requests that this Court finally approve the Settlement and enter a final judgment and order in the form agreed to by the parties and submitted concurrently. As noted, neither Gen nor any Settlement Class Members oppose this motion.

Dated: June 3, 2026

Respectfully submitted,

*/s/ Michael L. Greenwald*
Michael L. Greenwald
Greenwald Davidson Radbil PLLC

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.

Class Counsel